IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KENNETH RHODES,                     §
TDCJ No. 2105263,                   §
                                    §
        Petitioner,                 §
                                    §
V.                                  §          No. 3:19-cv-1076-K-BN
                                    §
DIRECTOR, TDCJ-CID,                 §
                                    §
        Respondent.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Kenneth Rhodes filed a *pro se* application for habeas relief under 28 U.S.C. § 2254. Dkt. No. 3. His habeas action was referred to the undersigned United States Magistrate Judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from the presiding United States district judge. Rhodes collaterally attacks his Dallas County conviction for aggravated robbery. *See* Dkt. No. 3 at 2. Rhodes entered an open plea of guilty to the charge and received a fifteen-year sentence. *See* Dkt. No. 3 at 3; *see also State v. Rhodes*, No. F16-33732-V (292nd Jud. Dist. Ct., Dallas Cnty., Tex. Nov. 21, 2016). The Fifth Court of Appeals of Texas affirmed Rhodes's conviction. *Rhodes v. State*, 05-16-01424-CR, 2017 WL 6759189, at *1 (Tex. App.—Dallas Dec. 29, 2017 pet. ref'd). The Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review (PDR). *Id.*; *see also* Doc. 3 at 3.  Rhodes then filed a state habeas application,

which the TCCA denied without written order. *See Ex parte Rhodes*, WR-76,124-02 (Tex. Crim. App. April 3, 2019); *see also* Dkt. No. 18-16.

Rhodes then filed a *pro se* 28 U.S.C. § 2254 habeas petition and accompanying memorandum [Dkt. Nos. 3 and 4] on May 3, 2019. The State filed a response. Dkt. No. 17. And Rhodes filed a reply. *See* Dkt. No. 24.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

### Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's

decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the

federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v.*

5

*Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the

6

petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only

a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

### A.    Effect of a Guilty Plea

Because many of Rhodes's claims turn on the validity of his guilty plea, the Court begins its analysis there.    Rhodes pleaded guilty under a plea agreement. *See* Dkt. No. 18-2 at 29-31. A guilty plea generally waives constitutional deprivations occurring prior to the plea. *See Haring v. Prosise*,

462 U.S. 306, 319-20 (1983). And a knowing and voluntary guilty plea waives all nonjurisdictional defects that occurred prior to the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992). This waiver includes all claims of ineffective assistance of counsel, except those relating to the defendant's entry of a guilty plea. *See Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

A plea is intelligently made when the defendant has "real notice of the true nature of the charges against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

Here, ample evidence in the state-court record shows that Rhodes's guilty plea was knowing and voluntary. Rhodes signed a "Judicial Confession" and other guilty-plea papers that included the "Courts Admonitions to Defendant," and "Defendant's Statements and Waivers." Dkt. No. 18-2 at 28-32. In these documents, Rhodes acknowledged his rights and stated that he is mentally competent and understood the nature of the allegations against him. *See* Dkt. No. 18-2 at 30-32. He specifically stated that:

> Accordingly, having waived my Federal and State constitutional rights against self-incrimination, and after having been sworn, upon oath, I judicially confess to the following facts and agree and stipulate that these facts are true and correct and constitute

the evidence in this case: on or about the 27th day of May, 2016, in Dallas County, Texas, I did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten and place ADRIANNA PEREZ in fear of imminent bodily injury and death, and the defendant used and exhibited a deadly weapon, to-wit: SCISSORS,

I further judicially confess that I committed the offense with which I stand charged exactly as alleged in the indictment in this cause.

Dkt. 18-2 at 28. "Official documents – such as a written plea agreement – are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'" *United States v. McDaniel*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).

Further, Rhodes made the following declarations during his plea colloquy in open court:

> The Court: Do you understand what the charge is in this case?
>
> Rhodes:     Yes, sir.
> …
>
> The Court: Do you understand that an aggravated robbery has a punishment range of anywhere from five years confinement, all the way to life in prison. Do you understand that?
>
> Rhodes:     Yes, sir
>
> The Court: My understanding is you have a plea bargain, what we will call an open plea in this case, whereby you're going to enter a plea of guilty in this case, and you're going to waive your right to a jury trial. You're going to allow the Court to assess your punishment, and that can be anywhere from deferred probation, all the way to life in prison. You're going to waive your right to

10

appeal, and you also are going to waive your right to cross-examine and confront witnesses. Do you understand that?

Rhodes:      Yes sir.

The Court:   All right. Have you understood everything you signed, including the Plea Bargain Agreement and the Judicial Confession?

Rhodes:      Yes, Your Honor
…

The Court:   Understanding all of those things, are you asking this court to accept your guilty plea and assess your punishment in this case as I have outlined to you?

Rhodes:      Yes sir.

Dkt. No. 18-4 at 5-8. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to voluntariness are not an absolute bar to raising this claim, Appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity."). And a habeas petitioner bears the burden of rebutting this presumption of regularity with clear and convincing evidence. *See Lloyd v. Director, TDJC-CID*, Civil Action No. 5:09-CV-162, 2012 WL 5831122, at *2 (E.D. Tex. Oct. 3, 2012) (citing 28 U.S.C. § 2254(e)(1)).

Here, the TCCA made an implicit factual finding that Rhodes's guilty plea was knowing and voluntary, and that finding is entitled to deference from this court. *See, e.g., Jackson v. Thaler*, Civil Action No. 4:10-CV-189-Y,

2010 WL 5093144, at *3 (N.D. Tex. Nov. 5, 2010), *rep. and rec. adopted*, 2010 WL 5090960 (N.D. Tex. Dec. 7, 2010) (noting that "[a]lthough the state habeas court did not enter express factual findings regarding the voluntary and knowing nature of Jackson's guilty plea, this court may reject the state court's implicit finding that his plea was freely, knowingly, and voluntarily made only if Jackson rebuts the presumption of correctness given to the state court factual findings 'by clear and convincing standards.'") (further citations omitted); *Sears v. Thaler*, Civil Action No. H-10-2529, 2011 WL 2162272, at *2 (S.D. Tex. May 31, 2011) (finding that explicit finding from state habeas court that guilty plea was knowing and voluntary was factual finding entitled to presumption of correctness).

Rhodes fails to present clear and convincing evidence that the TCCA's implicit factual finding that his confession was knowing and voluntary was wrong. On the contrary, ample evidence supports it, and the undersigned's analysis proceeds accordingly.

### B.    Ineffective Assistance of Counsel ("IAC")

#### (i)    *Waiver of Certain IAC Claims*

Rhodes makes various IAC claims in his petition, but most of them do not concern his guilty plea. Specifically, Rhodes's IAC claims 1-5 and 8-10 do not contest the voluntariness of the plea. *See* Dkt. No. 3 at 7. Through these claims, Rhodes claims that his counsel was ineffective for failing to investigate his case, generally; failing to interview state and exculpatory

witnesses; failing to object to prosecutorial conduct when the State elicited false, allegedly perjurious testimony from the victim; failing to object to the affirmative finding of deadly weapon; failing to object to and investigate the trial court not considering a lesser included offense; and failing to challenge the "void" judgment of aggravated robbery. *Id.* Because these are not the kinds of claims that "render the guilty plea involuntary," *see United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), the undersigned finds that Rhodes waived them through his knowing and voluntary guilty plea. *See Smith*, 711 F.2d at 682 ("Thus, because we have already held Smith's plea to be voluntary, it follows that his claims of ineffectiveness unrelated to the guilty plea are waived – *e.g.*, Johnson's alleged failure to review the prosecutor's file to verify laboratory test results that the substances Smith delivered were in fact heroin and cocaine; Johnson's alleged failure to investigate witnesses and the legality of Smith's arrest; or any other alleged failure of Johnson to find 'holes' in the government's case against Smith."); *Mendoza v. Stephens*, No. 3:14-cv-3690-N-BN, 2016 WL 3369287, at *5 (N.D. Tex. April 4, 2016) *rep. and rec adopted*, No. 3:14-CV-3690-N, 2016 WL 3346068 (N.D. Tex. June 16, 2016) ("[B]ecause [petitioner's] remaining claims of ineffective assistance of counsel – regarding a requested fingerprint analysis, a motion to suppress, and investigation of witnesses – do not implicate the voluntariness of his guilty plea; thus, those grounds have been waived.") (citation omitted); *Wisener v. Thaler*, No. 4:09-cv-359-Y, 2010 WL 546738, at *3 (N.D. Tex. Feb.

17, 2010) ("[T]o the extent [Petitioner] complains that he is innocent of the charged offense…, that there was insufficient evidence to support his conviction, and that trial counsel failed to conduct an independent investigation into the facts of his case, to file pretrial motions, and to interview key state witnesses on his behalf, matters unrelated to the voluntariness of the plea, the claims are nonjurisdictional and are waived by the plea.") (citing *United States v. Broce*, 488 U.S. 563, 573-74 (1989)).

Thus, the state court's rejection of IAC claims 1-5 and 8-10 was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

But Rhodes does make some IAC claims that arguably go to the validity of his confession, requiring further analysis. Specifically, he argues that his trial counsel was ineffective for failing to request a competency hearing (IAC claim 6) and for failing to present the trial court with his mental health records (IAC claim 7). *See* Dkt. No. 3 at 7; *see also Lewis v. Thaler*, Civil Action No. H—09—04014, 2010 WL 2640144, at *7 (considering merits of failure-to-request-competency-hearing IAC claim despite the petitioner's guilty plea). Accordingly, the Court will review the merits of IAC claims 6 and 7.

### *(ii)    Legal Standards*

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton*

*v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned

16

performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance

on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court,

the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

### (iii)    Competency-Related IAC Claims

As for IAC claims 6 and 7, the undersigned finds that the state court's rejection of these claims was not an unreasonable application of *Strickland*. As the undersigned understands these claims, Rhodes maintains that his trial counsel's failure to request a competency hearing and to present his mental health records prejudiced him because he was actually incompetent at the time of his plea, and the trial court would have rejected the plea had the competency hearing occurred or had it been presented with his mental health

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

records.

It is true that, in addition to offering a knowing and voluntary plea, a criminal defendant must also be competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). And the conviction of a mentally incompetent defendant violates constitutional due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). "The test for competence is whether the defendant had both the present ability to consult with counsel and a rational and factual understanding of the proceedings against him." *Lewis*, 2010 WL 2640144, at *6 (citing *Dusky v. United States*, 362 U.S. 402 (1960)). To challenge competency on collateral review, the petitioner must "prove, by a preponderance of the evidence, that he was incompetent in fact at the time of the plea." *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990).

But Rhodes fails to show any prejudice from the failure of his trial counsel to request a competency hearing or to present his mental health record because he has not shown, by a preponderance of the evidence, that such a hearing would have been granted. There is no indication from either Rhodes's plea colloquy or guilty-plea paperwork that he lacked competence; in fact, Rhodes specifically claims that he *is* mentally competent in the portion of the plea agreement entitled "Defendant's Statements and Waivers." Doc. 18-2 at 30. Rhodes does not challenge this attestation. Instead, he argues that prior mental problems, as well as a traumatic brain injury that he claims he suffered after a witness to his crime hit him in the

20

head with a shovel, demonstrate his incompetence. The undersigned disagrees. Rhodes points to no actual evidence bearing on competency at the time of the guilty plea. He supplies an "Intake Mental Health Evaluation," which was issued after his guilty plea and says nothing of his competence to enter the same; a document entitled "correctional managed care outpatient mental health services," also issued after Rhodes pleaded guilty, which provides a treatment plan for "psychiatry chronic care"; and undated documents from Parkland Hospital entitled "How do I Improve Thinking Skills" and "Cognitive Problems After Traumatic Brain Injury." Dkt No. 4 at 38, 57-58. But, again, these documents do not establish that Rhodes was diagnosed with a traumatic brain injury *at the time of his guilty plea*, much less demonstrate that the trial court would have found him incompetent to render a plea. Thus, Rhodes cannot show prejudice from the failure of his trial counsel to present the trial court with his mental health records or to request a competency hearing.

Rhodes also (in connection with his competency-related IAC claims) makes arguments that seemingly go towards the voluntariness of his plea. Specifically, Rhodes claims that his trial counsel pressured him to make an "illadvised, unintelligent, and truly 'involuntary'" decision to take the guilty plea. *See* Dkt. No. 4 at 7. Rhodes also suggests that his trial counsel advised him that he had to plead guilty to receive mental health treatment, rendering his plea involuntary. *Id.* at 8.

But these arguments are conclusory, and the TCCA's rejection of them did not result in a decision that was contrary to, or was an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Instead, as discussed above, ample record evidence demonstrates that Rhodes's plea was knowing and voluntary, and this knowing and voluntary guilty plea waived all pre-plea claims except those that relate to the entry of his guilty plea. *See Tollett*, 411 U.S. at 267.

The state court's denial of Rhodes's competency-related IAC claims was not an unreasonable application of *Strickland*, and those claims should be dismissed.

### (iv)    Appellate Counsel IAC Claim

Rhodes also claims that his appellate counsel was ineffective for not raising the issue of his trial counsel's incompetence on direct appeal. *See* Dkt. 3 at 8. The state court's rejection of Rhodes's appellate IAC claim was not an unreasonable application of *Strickland* because Rhodes cannot show prejudice. First, under Texas law, "[g]enerally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard…[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective assistance claims." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (internal citations and footnotes omitted). Here, Rhodes *did* assert his IAC claims for state habeas review, where they were rejected; he fails to show how

he was prejudiced by raising his IAC claims in accordance with standard Texas procedure. Second, Rhodes fails to show his ineffective assistance claims would have succeeded had the appellate court considered them. As noted, the state habeas court did not unreasonably apply *Strickland* in rejecting his IAC claims, and Rhodes fails to show how these claims would have fared better on direct appeal. Thus, the state habeas court did not err in rejecting Rhodes appellate IAC claim.

## C.    Prosecutorial Misconduct

Rhodes claims that his Due Process rights were violated by the State's knowing use of perjured testimony from the victim. Specifically, the victim testified that Rhodes placed scissors to her neck during the robbery, but Rhodes claims that he did not have or use scissors. *See* Dkt. 3 at 8; Dkt. 4 at 12. "The Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony." *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).

But Rhodes's voluntary guilty plea waives any use-of-perjured-testimony claims. *See United States v. Davis*, 608 F.2d 555, 557 (5th Cir. 1979) ("Defendant Davis' argument that the Government permitted perjured testimony because two Government witnesses contradicted each other is foreclosed from consideration on appeal because his knowing guilty plea

waived all nonjurisdictional defects. Perjury is not a jurisdictional defect.");
*Smith v. McCain*, Civil Action No. 19-325, 2019 WL 5696146, at *3 (E.D. La.
May 28, 2019) (citations omitted) (same). Thus, the state habeas court's
rejection of Rhodes's use of perjured testimony claim was not erroneous.

## Recommendation

The Court should deny Rhodes's application for a writ of habeas
corpus.

A copy of these findings, conclusions, and recommendation shall be
served on all parties in the manner provided by law. Any party who objects to
any part of these findings, conclusions, and recommendation must file specific
written objections within 14 days after being served with a copy. *See* 28
U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection
must identify the specific finding or recommendation to which objection is
made, state the basis for the objection, and specify the place in the magistrate
judge's findings, conclusions, and recommendation where the disputed
determination is found. An objection that merely incorporates by reference or
refers to the briefing before the magistrate judge is not specific. Failure to file
specific written objections will bar the aggrieved party from appealing the
factual findings and legal conclusions of the magistrate judge that are
accepted or adopted by the district court, except upon grounds of plain error.
*See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: May 27, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE